UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No.: _____

THE GRAY INSURANCE COMPANY,

    Plaintiff,

v.

HARBOR POINTE WEST CONDOMINIUM
ASSOCIATION OF DUNEDIN, INC.,

    Defendant.

                                        /

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, The Gray Insurance Company ("Gray"), through counsel, and pursuant to, *inter alia*, 28 U.S.C. § 2201, *et seq.*, files this Complaint for Declaratory Judgment against Defendant, Harbor Pointe West Condominium Association of Dunedin, Inc. ("HPW"), seeking declaratory judgment that Gray has no liability to HPW under the performance bond that Gray issued on the grounds that:

1.     HPW failed to comply with the conditions precedent to and breached the performance bond that Gray issued naming HPW as obligee;

2.     HPW's material modification of the contract bonded by Gray; alternatively,

3.     That Gray is discharged from all claims related to certain work that HPW purported to add to the bonded contract that was separate and distinct from the contract work that it bonded because Gray did not agree to bond that

additional work; and that Gray's liability, if any, is limited to the penal sum of the Bond.

In support, Gray alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Gray is a Louisiana corporation that maintains its principal place of business in Metairie, Louisiana, making it a citizen of Louisiana pursuant to 28 U.S.C. § 1332(c)(1).

2.      HPW is a Florida not-for-profit corporation and association pursuant to Chapter 720, Florida Statutes, that maintains its principal place of business in Oldsmar, Pinellas County, Florida, making it a citizen of Florida pursuant to 28 U.S.C. § 1332(c)(1).

3.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and because complete diversity exists between Gray and HPW as citizens of different states. This Court also or alternatively has jurisdiction over this action pursuant to 28 U.S.C. § 2201 because an actual and justiciable controversy exists between Gray and HPW.

4.      Jurisdiction and venue are proper in this Court because HPW's principal offices are located within, a substantial portion of the events giving rise to the claims occurred in, and/or the project at issue is located in Pinellas County, which is within the boundaries of the Middle District of Florida and within the province of the Tampa Division of this Court.

## **FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

**I.      The Project, Construction Contract, and Bond**

5.      In or about May 2019, HPW entered into a contract ("Original Contract") with Wilson, Kehoe & Miller Corporation d/b/a WKM Restoration Group ("WKM"), for work referred to a Walkway Framing Repairs and Related Work involving remediation and/or repairs to certain walkways located on the north side of the condominium complex, located in Dunedin, Pinellas County, Florida (the "Project") based on plans and specifications provided by HPW through its engineer, Delta Engineering & Inspection, Inc. ("Delta"). The Original Contract had a Contract Sum of $507,340.00.   The Original Contract Documents are voluminous and is in the possession of HPW.  A copy of the Standard Form of Agreement between Owner and Contract that is part of the Original Contract Documents is attached as **Exhibit "A."**

6.      In connection with the Original Contract, Gray issued an industry-standard AIA Document A312-2010 Performance Bond, bearing Bond # GSB22388, naming WKM as Contractor and HPW as Owner (the "Bond") in the penal sum of $507,340.00 (the "Penal Sum"). A copy of the Bond is attached hereto and incorporated herein as **Exhibit "B**."

7.      HPW did not disclose at the time of the Original Contract that it did not have the funds in hand to pay the Contract Sum and failed to timely make the very first payment due under the Original Contract to WKM.

8.      The Bond provides, in pertinent part:

§ 3 If there is no Owner Default under the Construction Contract, the Surety's obligation under this Bond shall arise **after**

.1 the Owner first provides notice to the Contractor and the Surety that the Owner is considering declaring a Contractor Default. Such notice shall indicate whether the Owner is requesting a conference among the Owner, Contractor and Surety to discuss the Contractor's performance. If the Owner does not request a conference, the Surety may, within five (5) business days after receipt of the Owner's notice, request such a conference. If the Surety timely requests a conference, the Owner shall attend. Unless the Owner agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of the Surety's receipt of the Owner's notice. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default;

.2 the Owner declares a Contractor Default, terminates the Construction Contract and notifies the Surety; and

.3 the Owner has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to the Surety or to a contractor selected to perform the Construction Contract.

* * *

§ 5 When the Owner has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

§ 5.1 Arrange for the Contractor, with the consent of the Owner, to perform and complete the Construction Contract;

§ 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and a contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Section 7 in excess of the

4

Balance of the Contract Price incurred by the Owner as a result of the Contractor Default; or

§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1 After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, make payment to the Owner; or

.2 Deny liability in whole or in part and notify the Owner, citing the reasons for denial.

9.      Thus, the Bond provides, among other things, that so long as there is no Owner Default[1] under the Construction Contract, Gray's obligations under the Bond shall arise after:

a. HPW first provides notice to WKM and Gray that it is considering declaring a Contractor Default;

b. HPW declares a Contractor Default, terminates the Construction Contract, and notifies Gray; and

c. HPW agrees to pay the Balance of the Contract Price in accordance with the Construction Contract to Gray, or to a contractor selected to perform the Construction Contract.

Bond, §§ 3.1-.3.3.

---

[1] Unless otherwise specified herein, capitalized terms have the meaning given to them in the Bond.

10.     If and when HPW satisfies the requirements of Section 3 of the Bond, Gray has the right to select one of four delineated options under Section 5 of the Bond.  Bond, § 5.

11.     Section 6 of the Bond expressly provides that Gray "shall be deemed to be in default" of the Bond only if it fails to proceed as provided in Section 5 of the Bond "with reasonable promptness," and then only after HPW sends an additional written notice to Gray "demanding that [Gray] perform its obligations under th[e] Bond . . . ."

12.     It is only after HPW sends this additional notice, and upon Gray's failure to comply with it, that Gray can be in default under the Bond, and HPW is afforded the right to enforce remedies available to it.

13.     Gray's liability, if any, to HPW is limited to the Penal Sum of the Bond.

## II.     HPW's addition of new work to the Original Contract

14.     As noted above, the Original Contract only related to walkway framing repairs.

15.     During WKM's performance of the Original Contract, HPW contracted with Delta to perform an evaluation of balconies on the south building of the condominium complex.

16.     Rather than issue a new contract to WKM, HPW added this work to the Original Contract by issuing Change Order 11 for Balcony Framing Repairs in the amount of at least $339,621.00 ("CO 11") (CO 11 contained unit prices for certain items, which could alter the change order amount depending on actual quantities). A copy of CO 11 is attached as **Exhibit "C."**

17.     WKM completed the Original Contract work, the walkway framing repairs, and that work was accepted by HPW.  HPW has not alleged any claims arising out of the Original Contract work.

18.     As the CO 11 balcony framing work was being performed, additional structural and deterioration issues were discovered, causing redesign by HPW's engineer, additional work and changes to the CO 11 work.  As a result, a number of change orders were issued by HPW increasing the cost and time for performance of the work.

19.     While WKM was performing the CO 11 balcony framing repairs, additional defects (unrelated to the balcony framing repairs) in the south building, which HPW had permitted to fall into a state of disrepair, were discovered by HPW and its engineers.

20.     HPW apparently had not commissioned Delta to perform a full building assessment before issuing the Original Contract or CO 11 but, rather, elected to perform repairs in a piecemeal fashion.  Even when the additional defects were discovered, HPW elected not to perform a comprehensive remediation of the building but instead elected to save money by performing spot repairs of portions of the south building other than the balconies (the "Additional Repair Work") that was separate from the Balcony Project added by CO 11.

21.     Rather than issue a separate contract for the Additional Repair Work, certain of the Additional Repair Work was added to WKM's scope of work through additional change orders (certain items of the Additional Repair Work set forth in Engineer's Supplemental Instructions from Delta were never added by change order to WKM's scope of work).

22.     Gray did not consent to the Additional Repair Work being added to the work it Bonded.

23.     The Additional Repair Work increased the cost of the work and substantially increased the time of performance of the work.   The Original Contract (which was completed by WKM) had a duration of 150 calendar days (approximately five months). Due to the change orders, including change orders for the Additional Repair Work, WKM's work on the south building extended to almost two years (almost four times the original duration), before work was stopped due to HPW's nonpayment of and lack of funds to pay WKM for work already performed by WKM in late January/early February of 2021.

**III.     HPW Stops Paying WKM.**

24.     HPW apparently did not have the funds to pay for work it had requested WKM to perform via change orders.  As a result, HPW only paid a portion of the payment that was due for payment application 12 submitted in early December of 2020.  HPW did not pay any portion of payment application 13.

25.     HPW thereafter advised WKM that it did not have the funds to pay WKM the amounts owed and work stopped on the Project (as amended by the various change orders) in late January/early February of 2021.

26.     As a result of the non-payment, WKM filed a lien on the condominium property.  HPW did not make any further payments to WKM until on or about July 26, 2021 and, on information and belief, never provided WKM with requested adequate assurance that it would be paid if WKM returned to work and work added to the Project by various change orders was not completed.

8

27.    The Original Contract bonded by Gray was completed by WKM and accepted by HPW.

28.    No claim was made to Gray at that time.

**IV.    HPW's Purported "Claim" Against the Bond**

29.    On or about June 2, 2022, HPW sent a letter to WKM titled "Notice of Construction Defect Claim Pursuant to Chapter 558, Florida Statutes" (the "June 2022 Notice"), enclosing a report from Burby Engineering detailing the alleged claims (the "Burby Report").

30.    HPW, however, did not simultaneously send the June 2022 Notice to Gray.

31.    On or about October 20, 2022, HPW sent a letter to Gray titled "Notice of Claim on Bond No. GSB22388" (the "October 2022 Notice").

32.    In the October 2022 Notice, HPW advised that it had sent the June 2022 Notice to WKM (a copy of which it enclosed) and asserted that "WKM has failed to remedy the deficiencies and therefore WKM has been and continues to be in default of the Contract as a result of its failure to perform the work pursuant to the Contract."

33.    None of the alleged deficiencies related to the Walkway Framing work on the north side of the condominium complex set forth in the Original Contract bonded by Gray. Rather, they related to the distinct and separate work on the south building, including work that had not been performed because of the stoppage of work due to HPW's lack of funds and failure to pay WKM.

34.    HPW then purported to submit its "claim on the referenced bond issued by Gray and demand[ed] that Gray proceed as provided in section five (5) of the Bond with

reasonable promptness."  The October 2022 notice did not terminate the Construction Contract or contain an agreement by HPW to pay the balance of the Contract Price to Gray even though there was a contract balance remaining on the work added by various change orders.

35.    On or about October 29, 2022, Gray, in response to the October 2022 Notice, informed HPW that it had failed to comply with the clear conditions precedent to a claim under the Bond, and that "Gray's rights and obligations under section 5 of the Bond have not been triggered."  Under a full reservation of rights, Gray explained that it was undertaking an investigation, and requested certain information and documentation from HPW.

36.    On or about November 18, 2022, Gray again informed HPW of its failure to comply with the clear conditions precedent to a claim under the Bond, and that HPW had not triggered Gray's rights and obligations under Section 5 of the Bond.

37.    On or about March 15, 2023, HPW sent a letter to Gray titled "Demand Surety Perform Obligations" (the "March 2023 Demand").  In it, HPW purported to demand, pursuant to Section 6 of the Bond, that "Gray perform its obligations under the Bond."  Again, HPW did not terminate the Construction Contract or agree to pay the balance of the Contract Price to Gray even though there was a contract balance remaining on the work added by various change orders.

38.    Because HPW did not comply with Section 3 of the Bond, Gray's obligation to elect an option under section 5 of the Bond never arose and any notice purporting to be a notice under Section 6 of the Bond was not valid.

39.     Five days later, on or about March 20, 2023, HPW filed a demand for arbitration with the American Arbitration Association against Gray, WKM, and the engineer retained by HPW in connection with the Project, Delta Engineering ("Delta") (the "AAA Proceeding") alleging damages in connection with the alleged deficiencies set forth in the Burby Report.

40.     Because HPW filed the AAA Proceeding without complying with Section 3 of the Bond, Gray was deprived of its right to elect an option under Section 5 of the Bond.

41.     The parties to the AAA Proceeding thereafter entered into a Mediation, Arbitration and Tolling Agreement, agreeing to arbitrate certain, but not all disputes, through private arbitration outside of the AAA (the "Arbitration Agreement").  A copy of the Arbitration Agreement is attached as **Exhibit "D**."

42.     The Arbitration Agreement specifically did not include an agreement to arbitrate Gray's surety defenses, and carved those defenses out of the scope of the arbitration.  Section 3 of the Arbitration Agreement provides:

> 3.     The pleadings served in the AAA proceeding as of the date of execution of this Agreement, as well as any and all claims between the parties, **with the exception of Gray's Performance Bond defenses to HPW's claims that are not based on defenses that can be raised by WKM under the WKM Contract**, shall be submitted to binding arbitration before John Vento as a single arbitrator (the "Arbitrator"). This new arbitration proceeding shall be referred to as the "New Arbitration Proceeding".

43.     Gray's Performance Bond defenses set forth herein are not defenses that can be raised by WKM under the WKM Contract as they arise under the Performance Bond and are surety specific defenses.[2]  Therefore, Gray is entitled to bring this action.

44.     Gray has no liability to HPW under the Bond because:

1.      HPW failed to comply with the conditions precedent to and breached the performance bond that Gray issued naming HPW as obligee; and/or

2.      HPW's material modification of the contract bonded by Gray.

45.     Alternatively, Gray is discharged from all claims related to certain work that HPW purported to add to the bonded contract that was separate and distinct from the contract work that it bonded because Gray did not agree to bond that additional work.

46.     Gray has retained the undersigned attorneys to represent it in this action and has agreed to pay the reasonable attorneys' fees for the services rendered.

47.     All conditions precedent to bringing this action have been performed or, in the alternative, have occurred or been waived.

## COUNT I – DECLARATORY JUDGMENT

48.     Gray incorporates the allegations of paragraphs 1 through 47 above as if fully set forth herein.

49.     A bona fide dispute and adverse interest exists between Gray and HPW concerning Gray's powers, privileges, rights, and/or obligations under the Bond insofar as Gray believes it is discharged of all Bond obligations and has no liability to HPW.  HPW,

[2] Gray reserves and does not waive its defenses that are subject to and will be heard in the New Arbitration Proceeding.

on the other hand, believes the Bond is still valid and that Gray is liable to HPW under the

Bond.

      50.     Gray seeks certainty as to the existence or non-existence of its obligations

and liability under the Bond. Accordingly, Gray has an actual, present, and practical need

to have any doubt on this issue resolved and removed.

      51.     The declaration Gray seeks relates only as to whether:

          1.     It is discharged under the Bond based on:

               a.     HPW's failure to comply with the conditions precedent to and

                        breach of the performance bond that Gray issued naming

                        HPW as obligee; and/or

               b.     HPW's material modification of the contract bonded by Gray

          2.     Alternatively, that Gray is discharged from all claims related to certain

               work that HPW purported to add to the bonded contract that was

               separate and distinct from the contract work that it bonded because

               Gray did not agree to bond that additional work; and that Gray's

               liability to HPW, if any, is limited to the Penal Sum of the Bond.

      52.     Thus, there is a case of actual controversy within the jurisdiction of this Court

and declaratory judgment in favor of Gray is proper.

      53.     Gray is entitled to its attorneys' fees and costs incurred in bringing this action

pursuant to pursuant to applicable law, the terms of the Original Contract, the Bond and

Section 57.105(7), Florida Statutes.

WHEREFORE, Gray respectfully requests that this Honorable Court grant it the following relief:

a.      Enter a declaratory judgment in Gray's favor and against HPW declaring that:

1.  Gray is discharged from any and/or has no obligation, liability, or duty of any kind to HPW under the Bond, and has no liability for any cost, expense, fee, or damage to HPW for the damages claimed in the New Arbitration Proceeding or as a result of having issued the Bond; or

2.  Alternatively, that Gray is discharged from all claims related to certain work that HPW purported to add to the bonded contract that was separate and distinct from the contract work that it bonded because Gray did not agree to bond that additional work; and that Gray's liability to HPW, if any, is limited to the Penal Sum of the Bond.

b.      Award Gray its attorneys' fees and costs incurred in connection with this action; and

c.      Grant and award Gray all other and further relief as this Honorable Court deems just, equitable, and proper.

PASKERT DIVERS THOMPSON

/s/   Alberta L. Adams
ALBERTA L. ADAMS
Florida Bar No. 80063
Email: aadams@pdtlegal.com
ROBERT C. GRAHAM, JR.
Florida Bar No. 105951
Email: rgraham@pdtlegal.com

100 North Tampa Street, Suite 3700
Tampa, Florida 33602
(813) 229-3500 – Telephone
(813) 229-3502 – Facsimile
*Attorney for The Gray Insurance Company*